IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:21-CR-00203 |
| v. | (Chief Judge Brann) |
| JOSEPH RYAN SUESSENBACH, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

**MARCH 21, 2024**

### I.   BACKGROUND

On July 22, 2021, Joseph Ryan Suessenbach was indicted on several counts of Stalking and Interstate Transmission of Threatening Communications.[1] On June 30, 2022, Suessenbach filed a notice of a possible insanity defense as required under Federal Rule of Criminal Procedure 12.2(a).[2] Currently before this Court is the Government's motion for pretrial commitment and psychological evaluation of Suessenbach.[3] The motion is now ripe for disposition; for the reasons that follow, it is granted in part and denied in part.

---

[1] Indictment, Doc. 3.
[2] Notice of Possible Insanity Defense, Doc. 45.
[3] Motion for Pretrial Commitment and Psychiatric Examination of Defendant, Doc. 66. The Court also held a status conference on March 15, 2024, during which it permitted counsel to raise arguments relating to the motion. *See* Scheduling Order, Doc. 77 at 4 ("At the status conference, counsel shall be provided the opportunity to explain whether it is necessary to remand Suessenbach to the custody of the Bureau of Prisons for psychological evaluation.").

## II. DISCUSSION

Under 18 U.S.C. § 4242(a), when a criminal defendant files a notice that he intends to rely on the defense of insanity, the Court shall order that a psychiatric or psychological examination of the defendant be conducted upon motion of the Government. 18 U.S.C. § 4247(b) specifies how such examinations are to be conducted. For examinations pursuant to an order under Section 4242, "the court may commit the person to be examined for a reasonable period, but not to exceed forty-five days, to the custody of the Attorney General for placement in a suitable facility."[4]

While the issue of confinement for psychological examination is infrequently litigated, the United States Courts of Appeals for the Fourth, Fifth, Eighth, and Tenth Circuits have all followed the same approach to resolving it.[5] "Although § 4247(b) uses the word 'may' when describing a district court's ability to commit a person to the BOP for an inpatient competency examination, the statute does not grant a district court unbounded discretion to order such a commitment as opposed to an outpatient examination."[6] "The institutionalization of an adult by the government triggers heightened, substantive due process scrutiny. There must be a 'sufficiently compelling' governmental interest to justify such action."[7] "Courts consider whether

---

[4] 18 U.S.C. § 4247(b).
[5] *See United States v. Song*, 530 F.App'x 255, 259 (4th Cir. 2013); *In re Newchurch*, 807 F.2d 404, 410-12 (5th Cir. 1986); *United States v. Neal*, 679 F.3d 737, 740-42 (8th Cir. 2012); *United States v. Deters*, 143 F.3d 577, 582-84 (10th Cir. 1998).
[6] *Song*, 530 F.App'x at 259.
[7] *Id.* at 259 n.5 (citing *Reno v. Flores*, 507 U.S. 292, 316 (1993) (O'Connor, J., Concurring)); *see also United States v. Salerno*, 481 U.S. 739, 748-50 (1987) (analyzing Due Process rights of pre-trial detainees).

the government can demonstrate sufficiently compelling interests warranting commitment of defendant that outweigh the defendant's liberty interests . . . . [C]ourts have ordered outpatient evaluations where the government has failed to articulate sufficiently compelling reasons to order a custodial examination."[8]

Where the Government offers no evidence that commitment is necessary or that outpatient examination is insufficient, exacting such a deprivation of liberty is an abuse of discretion by the district court.[9] As the United States Court of Appeals for the Fifth Circuit stated in *In re Newchurch*:

> In making its determination, the district court should consider the purpose of the examination, the availability and competency of experts in the vicinity of the court, and the fact that the question of competency to stand trial is for the court, while the issue of insanity at the time of the offense is for the trier of fact.[10]

Here, the Government does not purport to provide any of this information. The Government's main argument relates to its beliefs about the expertise of Bureau of Prison doctors and about the quality of a longer examination:

> Bureau of Prison doctors routinely and specifically conduct examinations of individuals for the purpose of determining whether they were sane at the time of their criminal offenses. These doctors are highly specialized and practiced in precisely the type of examination that is essential to allow them to render a thorough and unbiased report. The specific examination period in this case, under section 4242, of forty-five

---

[8] *United States v. McDonald*, No. 09-656-02 (SDW), 2012 U.S. Dist. LEXIS 142620, at *7 (D.N.J. Oct. 1, 2012).
[9] *Newchurch*, 807 F.3d at 410-11; *see also Neal*, 679 F.3d at 741-42; *Deters*, 143 F.3d at 582-84; *United States v. Majkowski*, No. 14-189, 2017 U.S. Dist. LEXIS 7799, at *1 (W.D. Pa. Jan. 17, 2017) (explaining that because there are "insufficient indicia of noncompliance" with defendant's psychological examination, "ordering him into the custody of the Attorney General/D.O.J. would, on this record, smack of punishment").
[10] *Newchurch*, 807 F.3d at 411.

days, would allow for medical professionals to observe a defendant not over a period of an hour or a few hours, but a course of weeks, in order to consider defendant's interactions with others, with staff, monitor his phone calls, emails, and generally observe his behavior to gain a precise understanding of what mental health considerations exist in his case and how he responds to a variety of outside factors.[11]

The Government's justifications for confinement fall into firmly rejected pitfalls in this area of law. To begin, the Government's rationale for Suessenbach's commitment for psychological evaluation mainly hinges upon its opinion on Bureau of Prison doctors and the efficacy of extended psychological observations. The circuit courts to have considered this issue have rejected this rationale:

> The district court should not undertake to evaluate the quality of outpatient examination as opposed to an examination conducted in the custody of the Attorney General solely on its personal past experience, for that experience is neither a matter of record, a subject for cross examination, nor a question susceptible to review on appeal.[12]

The Government's rationale about Bureau of Prisons doctors and the utility of extended psychological evaluations is also faulty because it applies equally to any request for commitment under Section 4247(b) and reflects no individualized inquiry into the necessity of such commitment in Suessenbach's case specifically.

This can be contrasted from the more individualized rationale given in the District of New Jersey's decision in *United States v. McDonald*, in which the defendant's competency to stand trial was at issue, the defendant asserted long-term memory loss alongside a "plethora" of medical claims allegedly affecting his

---

[11] Brief in Support, Doc. 67 at 5-6.
[12] *Newchurch*, 807 F.2d at 411-412; *Song*, 530 F.App'x at 260 (citing *Newchurch* for the same proposition).

competency, and the Government claimed that the defendant was malingering.[13] These circumstances along with others justified the necessity of a "thorough and complete" evaluation going beyond a "simple, routine psychiatric evaluation."[14]

Here, the Government merely states that commitment is necessary for "essential observations" to "be observed."[15] There is simply no way for the Court to evaluate what the Government means or how it presents a uniquely compelling need for evaluation in the custody of the Bureau of Prisons, as that need relates to the individualized circumstances of Suessenbach's case. This is far from sufficient for the Court to conduct an individualized inquiry into the need for Mr. Suessenbach's commitment, nor is it sufficient to convince this Court that an evidentiary hearing is necessary.

The Government also acknowledges that Suessenbach is only claiming insanity at the time of his offenses, not incompetency to stand trial.[16] Its analysis then runs headlong into the observation that when a district court orders commitment for psychological evaluation, its explanation should "explain the difference, if any, in the conditions required for an adequate examination of present medical condition and those that might be appropriate for examination of a person whose present

---

[13] *McDonald*, 2012 U.S. Dist. LEXIS 142620, at *9-10.
[14] *Id.*
[15] Brief in Support, Doc. 67 at 6 ("Mr. Suessenbach's evaluation cannot be conducted on an outpatient basis, nor during a short period of confinement in a hospital, as essential observations, among other factors, could not be observed."); Doc. 70 at 7-8 (same).
[16] *See* Motion for Pretrial Commitment and Psychological Evaluation, Doc. 66 ¶ 11.

competency is not at issue but who asserts his insanity at some earlier time."[17] As this case appears to fall into the latter category, it is unclear to this Court why outpatient examination would be insufficient to evaluate Suessenbach.[18]

The Government also states that there are few published cases on this area of law "because in most instances wherein a defendant is charged with a serious federal crime *and* there are allegations of threatening or dangerous behavior *and* there are apparent mental health concerns, the defendant is detained pre-trial."[19] It further explains that "myriad factors were at play" when Suessenbach was granted pretrial release due to the nature of the COVID-19 pandemic at the time.[20]

This all may be true, but it has nothing to do with explaining why an extended inpatient psychological evaluation in the custody of the Bureau of Prisons, as opposed to an outpatient or hospital evaluation, is necessary to evaluate Suessenbach's insanity defense. To the extent the Government suggests that this Court repurpose Section 4247(b)'s psychological evaluation procedures as a roundabout method of confining Suessenbach due to any danger he may pose to the public, this Court declines to do so; that is not the question before it.

In its Reply Brief, the Government attempts to introduce some individualized analysis of Suessenbach's circumstances. Generally, it states that Suessenbach only

---

[17] *Newchurch*, 807 F.2d at 411.
[18] *Cf. Mcdonald*, 2012 U.S. Dist. LEXIS 142620, at *9-10 (government's motion for pretrial commitment for psychological evaluation granted where, *inter alia*, defendant's competency was at issue).
[19] Reply Brief, Doc. 70 at 4.
[20] *Id.* at 5 n.1.

appeared in person for at most one hearing and was alleged to have violated a condition of his pretrial release by contacting the victims in this case.[21] The Government cites to two district court cases, in which the fact that a defendant had not failed to appear in court, had stable employment or support networks, or had not failed to comply with imposed conditions of release weighed against a Defendant's remand to Bureau of Prisons custody.[22] It then reasons that Suessenbach's failure to appear in court in person and violation of the initial terms of release should weigh *towards* confinement for psychological evaluation in his case.

Fixating on how frequently Suessenbach was physically present in the courtroom misses the forest for the trees. The analyses by the *Gomez-Borges* and *Krauth* courts were based on the United States Court of Appeals for the Tenth Circuit's decision in *Deters*.[23] *Deters* accepted the rationale posed in *In re Newchurch* that detention may be permissible if it "is reasonably necessary to assure [the accused's] presence at trial or to protect some other important governmental interest."[24] Because the defendant in *Deters* lived in an unstable environment far from the state in which she was being tried, the Tenth Circuit concluded that the district court did not abuse its discretion in finding that detention was necessary to ensure her

---

[21] *Id.* at 4-5.
[22] *Id.* at 5-6 (citing *U.S. v. Gomez-Borges*, 91 F.Supp. 2d 477, 480 (D.P.R. 2000) and *U.S. v. Krauth*, No. CR09-3044, 2010 U.S. Dist. LEXIS 8571, at *5-6 (N.D. Iowa Feb. 2, 2010) (Scoles, M.J.)).
[23] *See U.S. v. Gomez-Borges*, 91 F.Supp. 2d at 480 (citing *Deters*); *Krauth*, 2010 U.S. Dist. LEXIS 8571, at *8-10 (citing *Deters*).
[24] *Deters*, 143 F.3d at 583 (citing *Newchurch*, 807 F.2d at 408).

appearance at trial and to ensure a speedy trial.[25] The *Gomez-Borges* and *Krauth* courts followed the *Deters* decision and evaluated the defendant's living conditions and appearances in court to determine "if the mental condition of the defendant evaluated on an outpatient basis poses an aggravated 'risk' that defendant would fail to appear at trial," or a risk that outpatient psychological examination would interfere with a speedy trial.[26]

The Government does not attempt to explain why Suessenbach's remote appearances, or earlier violation of his release conditions, shows that inpatient psychological evaluation is necessary, that there is a risk he will not appear for trial, or that there will be an impediment to his speedy trial. In fact, the Government only argues that outpatient evaluation will be an ineffective means of evaluating Suessenbach's insanity defense. At no point does the Government attempt to argue that there is any risk of Suessenbach failing to appear for trial or any risk that he will not have a speedy trial. That makes the factual considerations analyzed in *Deters*, *Gomez-Borges* and *Krauth* entirely irrelevant to the Government's motion.

---

[25] *Id.* at 583-84.
[26] *Gomez-Borges*, 91 F.Supp. at 480 (citing *Deters*, 143 F.3d at 583-84); *Krauth*, 2010 U.S. Dist. LEXIS 8571, at *9-10 (citing *Deters*); *see also McDonald*, 2012 U.S. Dist. LEXIS 142620, at *9 (1065 days of delay from date of indictment resulting from excessive continuances supported custodial examination to "move the case along as expeditiously as possible"); *Majkowski*, 2017 U.S. Dist. LEXIS 7799, at *1 (refusing 4247(b) motion because there were no indicia of defendant's noncompliance with attempts to conduct psychological examination, but noting that "any failure on the part of Defendant to timely comply with any aspect of the psychological-examination procedures, including the gathering and submission of medical records to the examiner and Defendant's appearance for the examination as scheduled, will result in proceedings to show why Defendant's bond should not be revoked, and/or to revisit the commitment-issue under Section 4747(b)").

In sum, the Government's arguments concerning "essential observations" offer this Court nothing to evaluate, and its arguments concerning Suessenbach's violation of the terms of release and his remote court appearances are irrelevant. The Government's only arguments for why this Court should remand Suessenbach to the custody of the Bureau of Prisons for psychological evaluation is that Bureau of Prisons doctors are experienced in detecting criminal defendants' sanity and that an extended observation period will produce a superior evaluation of sanity to an outpatient evaluation. These generic arguments communicate nothing individualized about why commitment would be necessary for an effective psychological evaluation of Suessenbach in particular.

### III.   CONCLUSION

Because the Government does not create a factual issue as to the insufficiency of outpatient evaluation, the risk of Suessenbach failing to appear at trial, or a risk that Suessenbach's speedy trial rights will be infringed, there is no need to conduct an evidentiary hearing on its motion. Accordingly, while the Court will order a psychiatric examination of Defendant Joseph Suessenbach, the Government's motion for pretrial commitment is denied.

Accordingly, **IT IS HEREBY ORDERED** that:

1. The Government's Motion for Pretrial Commitment and Psychiatric Examination of Defendant (Doc. 66) is **GRANTED** in part and **DENIED** in part:

    a.        An outpatient psychological examination of Suessenbach shall be conducted in accordance with the procedures set out in 18 U.S.C. § 4247; and

    b.        The Government's Motion for Pretrial Commitment and Psychiatric Examination of Defendant (Doc. 66) is otherwise **DENIED**.

                                      BY THE COURT:

                                      *s/ Matthew W. Brann*
                                      Matthew W. Brann
                                      Chief United States District Judge